UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LT. PAT STOCKDALE and ) | |
| LT. SHANE DUNNING, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-241 |
| ) | Judge Aleta A. Trauger |
| KIM HELPER, in her individual capacity, and ) | |
| THE CITY OF FAIRVIEW, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss filed by defendant District Attorney General Kim Helper (Docket No. 15), to which the plaintiffs, Lt. Pat Stockdale and Lt. Shane Dunning, have filed a Response in opposition (Docket No. 19). For the reasons discussed herein, the motion will be denied.

## BACKGROUND & PROCEDURAL HISTORY[1]

The plaintiffs are both former Lieutenants with the Fairview Police Department in the municipality of Fairview in Williamson County, Tennessee (the "Department"). They were both promoted to this position in March of 2015 and had unblemished records with the Department. This lawsuit arises from the plaintiffs' allegations that they were suspended, and ultimately terminated, from the Department in retaliation for their public disapproval of certain alleged misconduct that was going on within the Department[2] and based on the personal motivations of

---

[1] For the purposes of this Motion to Dismiss, the facts are drawn from the Complaint (Docket No. 1) and are presumed to be true.

[2] The alleged misconduct included the practice of allowing inferior, auxiliary officers to take authority over more senior officers who outranked them, disrupting the chain of command,

1

the defendants. With respect to defendant Helper, who is the District Attorney General for Williamson County, the plaintiffs allege that she took improper actions to influence the Department to terminate the plaintiffs and that these actions were beyond the scope of her role as prosecutor.

According to the Complaint, Helper had personal motives for wanting the plaintiffs terminated from their positions, despite the absence of any wrongdoing. Specifically, the Complaint alleges that Helper did not want the plaintiffs to be in competition for promotion to Department Chief, a position she wanted filled by another officer to whom she had promised her support. The Complaint also alleges that Helper's ill will toward the plaintiffs stemmed from their complaints against other Department officers about the misconduct allegedly taking place within the Department. According to the Complaint, Helper participated in a secret meeting with the Fairview Board of Commissioners in February of 2016 that was held in violation of Department protocol. During this meeting, it was decided that the plaintiffs would be placed on an unjustified administrative leave (without the consent of the City Manager, who was legally obligated to make these types of decisions) and that an investigation would be launched by Helper's office into any criminal conduct by the plaintiffs (though none was suspected) in an effort to justify their ultimate termination. At the same time, it was decided that there would not

---

because the auxiliary officers were in a *quid pro quo* relationship with the Department, by which the auxiliary officers provided secondary employment contracts to officers for private security at the auxiliary officers' individually-owned properties. Preferential treatment of the auxiliary officers also included the falsification of documents and various other violations of Department policies. The Complaint further alleges that at least one of these auxiliary officers was ultimately offered a promotion to a position that had not been posted internally, in violation of Department policy, and for which the officer lacked the requisite credentials. Moreover, the Complaint alleges that the *quid pro quo* arrangement endangered the citizens of Fairview by placing the private security needs of the auxiliary officers above the general safety of the city. Finally, the Complaint alleges that the Department mishandled the arrest of one of these officers in a prostitution sting, attempted to cover up the scandal, and threatened the plaintiffs for their failure to go along with these cover-up efforts.

be any criminal investigations of other officers who *were* suspected of misconduct and had been the subject of the plaintiffs' complaints.

Following the meeting, on March 1, 2016, the plaintiffs were suspended by the Department, pending the ongoing criminal investigation, and they were told that their suspensions were carried out "to insure the integrity of the investigation," though there were no official allegations of misconduct committed by the plaintiffs. (Docket No. 1, ¶ 51). According to the Complaint, the investigation was neither a justifiable reason for the plaintiffs' suspensions under Department policy, nor was it consistent with past decisions to allow other officers to remain on duty while the subject of criminal investigations. The Complaint also alleges that Helper conspired with other Fairview officials to make it appear as though a criminal investigation were being conducted on the entire Department, when really only the plaintiffs were being investigated. Further, Helper maintained the ongoing investigation of the plaintiffs past the point in time when the evidence already exonerated the plaintiffs of any wrongdoing, in the hope of finding some evidence of misconduct that could support their termination. According to the Complaint, there were many communications between Helper and representatives of the City of Fairview about efforts to have the plaintiffs terminated from their positions and prevented from occupying any positions within the Department.

On July 21, 2016, while they were on administrative leave, the plaintiffs filed an action in the United States District Court for the Middle District of Tennessee, bringing claims against the City of Fairview and individual members of the Fairview Board of Commissioners for: 1) violation of the plaintiffs' constitutional rights to due process, equal protection, and freedom of speech under the First Amendment (pursuant to 42 U.S.C. § 1983 ("Section 1983")), 2) violation of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, 3) Official oppression

under Tenn. Code Ann. § 39-16-403, and 4) common law retaliation, defamation, and slander. *Stockdale v. The City of Fairview*, Case No. 3:16-cv-1945 (the "Prior Action"). The Honorable Kevin Sharp issued a Temporary Restraining Order in the Prior Action, prohibiting the City of Fairview from terminating the plaintiffs' employment, eliminating their positions, hiring or promoting others into the plaintiffs' positions, demoting the plaintiffs, or eliminating the plaintiffs' pay. (Case No. 3:16-cv-1945, Docket No. 7.) In August of 2016, a new City Manager for Fairview, Scott Collins, took office, and the Prior Action was subsequently dismissed with prejudice pursuant to a settlement agreement between the parties. (Case No. 3:16-cv-1945, Docket No. 25.) The plaintiffs were then returned to active duty with the Department on September 1, 2016, and, after that time, the plaintiffs carried out their duties satisfactorily and received no complaints or disciplinary action.

Following the plaintiffs' reinstatement, however, Helper continued to advise the new City Manager, Collins, that she wanted the police department to be restructured so that officers were assigned according to her preferences, and she threatened to withdraw prosecutorial staffing from the Fairview City Court if her wishes were not followed. Specifically, Helper communicated to Collins that she wanted the plaintiffs removed from their positions. Helper then notified Collins that she would place a *Giglio* impairment on the plaintiffs with respect to all future prosecutions,[3] though the Complaint alleges that there was no basis for the impairment, as

---

[3] A *Giglio* impairment of a police officer refers to a prosecutor's decision not to allow the officer to testify at the trial of a criminal defendant because the prosecutor would be required to disclose to the defense existing information about the officer's prior misconduct or other grounds to attack the officer's credibility, disclosures which could compromise the prosecution. *Giglio v. United States*, 405 U.S. 150 (1972) (holding that a prosecutor must disclose any evidence impacting a witness's credibility when that witness's testimony can be determinative of guilt or innocence); *see also Thomas v. Westbrooks*, 849 F.3d 659 (6th Cir. 2017). Officers who are *Giglio* impaired based on the existence of such compromising information may be prevented from participating in police investigations or making arrests so as to avoid a situation where a

the investigation of the plaintiffs uncovered no misconduct or lack of credibility on the part of the plaintiffs. Helper also allegedly corresponded with the Fairview Mayor about her wishes to have the plaintiffs terminated from their positions. Helper expressed that, even if there were no basis for the *Giglio* impairment, she had "other reasons" to request the removal of the plaintiffs from their employment. (Docket No. 1, p. 21.) The plaintiffs were ultimately terminated by the Department, and the *Giglio* impairments were cited as the official grounds for their termination. The Complaint, however, alleges that the real reason for the plaintiffs' termination was the defendants' desire to retaliate against the plaintiffs for their complaints against the Department and their filing of the Prior Action, as well as the pressure exerted on the Department by Helper due to her own personal dislike of the plaintiffs.

On January 31, 2017, the plaintiffs filed the Complaint in this action against the City of Fairview and Helper. The Complaint brings claims against Helper for 1) violations of the plaintiffs' constitutional rights under Section 1983, 2) retaliation in response to the plaintiffs' exercise of their constitutionally protected rights in filing the Prior Action, 3) Official oppression under Tenn. Code Ann. § 39-16-403, and 4) the following state common law claims: tortious interference with a business relationship (the plaintiffs' employment relationship with the Department and prospective employment relationship with other police departments), defamation, and false light invasion of privacy. (Docket No. 1.) The Complaint seeks compensatory and punitive damages as well as permanent injunctive relief, "enjoining the Defendants from further deprivation of the constitutional rights of the Plaintiffs and any further

---

criminal prosecution is dependent on that officer's testimony. According to the Complaint, a *Giglio* impairment can, thus, be grounds for an officer to be terminated from his or her position and/or to be refused a position in any other department. The plaintiffs allege that Helper issued a *Giglio* impairment that would prevent them from testifying in criminal trials in Fairview, despite the fact that there was no existing information undermining their credibility that would need to be disclosed to the defense in a case in which they were to testify.

attempts to unlawfully terminate them from the City of Fairview Police Department." (Docket No. 1, p. 8.) On March 21, 2017, the City of Fairview filed an Answer. (Docket No. 12.)

On April 12, 2017, Helper filed the currently pending Motion to Dismiss (Docket No. 15), along with a Memorandum in support (Docket No. 16), arguing that the claims against her should be dismissed for lack of jurisdiction under Rule 12(b)(1), based on the doctrine of prosecutorial immunity. Helper also argues that the state law claims for defamation and tortious interference with a business relationship should be dismissed under Rule 12(b)(6) for failure to sufficiently plead certain elements of the claims. Finally, Helper argues that the plaintiffs' claims for injunctive relief are inappropriate and should be denied. On May 10, 2017, the plaintiffs filed a Response in opposition. (Docket No. 19.)

On June 9, 2017, the City of Fairview filed a Motion to Dismiss (Docket No. 25) along with a Memorandum in support (Docket No. 26). That motion is not yet ripe and will be resolved in a separate opinion.

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

Likewise, a Rule 12(b)(1) motion to dismiss that is based on the face of the complaint – rather than a factual challenge to the allegations therein – requires the court to consider the allegations of fact in the complaint to be true. *Genetek Bldg. Prods., Inc. v. Sherwin-Williams, Co.*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). The plaintiff then need only demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

## **ANALYSIS**

Helper's primary ground for her Motion to Dismiss is her argument that the court lacks jurisdiction over the federal claims against her under Rule 12(b)(1), because Helper is protected by the doctrine of absolute prosecutorial immunity. Helper then argues that, should the court find that the federal claims must be dismissed on the basis of absolute prosecutorial immunity,

the court should decline to extend supplemental jurisdiction over the state law claims.[4] This is a facial attack upon the Complaint, rather than a factual challenge to any of the allegations therein. Helper alternatively argues that, with respect to the state law claims for defamation and tortious interference, the plaintiffs have failed to sufficiently plead the elements of the claims and they should, therefore, be dismissed under Rule 12(b)(6). Accordingly, for the purposes of this motion, the court will interpret the Complaint in the light most favorable to the plaintiffs, construing all facts therein as true, and will discuss each purported ground for dismissal in turn below.

Helper also argues that the plaintiffs' request for injunctive relief should be dismissed because the plaintiffs are currently not employed by the Department and, therefore, there is no basis to find that the absence of an injunction will lead to their immediate and irreparable harm. The plaintiffs, however, are not seeking a preliminary injunction but, rather, seek permanent injunctive relief, along with monetary damages, in the event that they succeed on the merits of their claims. The court finds that the question of whether injunctive relief might ultimately be appropriate is not one that the court need reach at this stage but is, instead, a remedies question that can be resolved if and when it has been decided that the defendants are liable for any of the alleged violations. The court finds that, at this stage, the claim for injunctive relief has been sufficiently pled because, to the extent that the resolution of this case involves the reinstatement of the plaintiffs, the Complaint suggests that a permanent injunction may be necessary to ensure that the plaintiffs' employment is protected in the future. This is particularly true in light of the fact that there has already been preliminary injunctive relief granted in the Prior Action, as well

---

[4] The court need not reach the issue of supplemental jurisdiction because, as discussed herein, the federal claims against Helper survive and, moreover, even if they did not, there are federal claims against the City of Fairview that may be proceeding in this action.

as a settlement in that case that precipitated the plaintiffs' reinstatement, yet the plaintiffs were subsequently terminated for allegedly improper reasons. The question of whether not granting permanent injunctive relief could lend itself to irreparable harm to the plaintiffs is, thus, one that should be decided only after the record has been fully developed. The court will not dismiss the request for injunctive relief at this time.

I. **Jurisdiction and Absolute Prosecutorial Immunity**

Helper correctly argues that, as a prosecutor, she is entitled to absolute prosecutorial immunity for all actions that are "intimately associated with the judicial phase of the criminal process." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). Helper is also correct that absolute prosecutorial immunity applies even when the protected conduct is done for improper personal motives. *Roe v. City and Cty of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997); *Cady v. Arenac Cty.*, 574 F.3d 334 (6th Cir. 2009); *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003). Moreover, a prosecutor's decisions and actions regarding the designation of *Giglio* material (meaning material about a potential witness that would need to be disclosed to the defense in the event that witness testifies) is covered by the doctrine of absolute prosecutorial immunity, even when such actions are taken outside of the realm of any particular criminal trial. *Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009); *see also Roe*, 109 F.3d 578 (applying absolute prosecutorial immunity to a prosecutor's decision to *Giglio* impair an officer with respect to all future criminal prosecutions, irrespective of allegations that the prosecutor may have been motivated by a personal disagreement with the officer); *Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992).

The law is clear, however, that absolute prosecutorial immunity extends only to conduct performed in the scope of the prosecutor's traditional advocacy function and does not extend to the prosecutor's investigative or administrative duties, which are subject to qualified immunity

9

only. *Van de Kamp*, 555 U.S. at 342-43. Unlike absolute prosecutorial immunity, qualified immunity does not apply where the defendant is alleged to have committed a constitutional violation and the right that was violated was a clearly established right of which any reasonable person in the defendant's position would have known. *Koubriti v. Convertino*, 593 F.3d 459, 471 (6th Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 US 800 (1982)). An official is not protected from suit on the basis of qualified immunity where the allegations support a finding that he or she acted with "malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815. Moreover, there is no basis for any sort of immunity for conduct that falls outside of the scope of a prosecutor's duties entirely.

Helper asserts that her decisions to issue a *Giglio* impairment on the plaintiffs and to communicate this decision to Fairview City Manager Collins were within the scope of her prosecutorial duties that are subject to absolute immunity. Helper then seems to argue that, because the plaintiffs were ultimately terminated on the official basis of the *Giglio* impairment, she is immune from liability for the plaintiffs' termination. What Helper overlooks, however, is that the Complaint alleges that the *Giglio* impairment was not, in fact, the reason for the plaintiffs' termination, nor is it the only alleged conduct by Helper that gives rise to this action. Rather, the Complaint alleges that the plaintiffs were terminated based on retaliation for both their constitutionally protected complaints about misconduct by other members of the department and the exercise of their constitutional rights in bringing the Prior Action. When read in the light most favorable to the plaintiffs, the Complaint suggests that Helper participated in – and improperly influenced – the retaliatory decision to terminate the plaintiffs and that Helper's implementation of the *Giglio* impairment was merely an attempt to legitimize that decision. Moreover, the Complaint also alleges that Helper participated in the earlier decision to

10

place the plaintiffs on administrative leave, again in retaliation for their exercise of constitutionally protected rights, and that this took place even before the *Giglio* impairment had been issued. Thus, the fact that Helper is immune from liability arising out of her decision to *Giglio* impair the plaintiffs does not render her immune from liability in this action, which arises out of Helper's other unprotected conduct.[5]

This action is distinguishable from the district court case cited by Helper in which a prosecutor was held immune from liability in a suit that arose strictly from the prosecutor's decision to *Giglio* impair an officer and the officer's resulting termination, without any other allegations against the prosecutor. *See Espinsosa v. Lynch*, No. CV-15-00324-TUC-FRZ(BGM), 2017 WL 781460 (D. Az. March 1, 2017). Helper's alleged misconduct in this action is more akin to the type of internal employment decisions that are *not* subject to official immunity. *Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge's decision to terminate a court employee is not an action for which he has absolute immunity from a suit for gender discrimination). In fact, the United States Court of Appeals for the Ninth Circuit, in a case cited by Helper, found that the scope of absolute immunity does not extend to a prosecutor's actions "involving termination, demotion and treatment of employees." *Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005) (holding that, while a prosecutor was entitled to absolute prosecutorial immunity for the decision not to prosecute cases investigated by a particular officer and the

---

[5] The court notes, however, that this other conduct be Helper that is alleged in the Complaint supports only the plaintiffs' claims for tortious interference with the plaintiffs' employment relationship with the Department. To the extent that the plaintiffs are also bringing a tortious interference claim against Helper with respect to their prospective employment relationships with *other* police departments, there are no allegations that Helper interfered with these relationships other than through her issuance of the *Giglio* impairments. Accordingly, Helper has absolute immunity for any claims of tortious interference with the prospective employment of the plaintiffs outside of the Department. The claim for tortious interference in the relationship between the plaintiffs and the Department, however, arises from conduct for which Helper is not immune, and those claims may proceed.

11

communication of this decision to the department, there was no immunity for the prosecutor's communications to the officer's employer disparaging his character and job performance and insisting that the officer be barred from all investigations).

Helper does not argue in her briefing that the claims against her should be dismissed on the basis of qualified immunity. Nevertheless, the court has considered this issue and finds that qualified immunity, while it may be relevant to Helper's decisions surrounding the criminal investigation of the plaintiffs, does not apply to bar the claims in this action. First, much of the conduct by Helper that is alleged in the Complaint– such as participating in an illicit meeting to discuss suspending the plaintiffs in retaliation for their complaints against the Department and attempting to coerce the City Manager into firing the plaintiffs by threatening to un-staff the City Court – falls entirely outside of the scope of her prosecutorial duties, including her administrative and investigative duties, and is subject to no form of immunity. Second, even to the extent that Helper's conduct did fall within her administrative and investigative duties, qualified immunity does not apply because the allegations clearly state a claim that Helper had reason to know that the plaintiffs' constitutional rights (to free speech and to due process of law) were being violated by her actions. The Complaint clearly alleges that Helper acted with malicious intention to have the plaintiffs' employment terminated in retaliation for their exercise of their constitutionally protected rights. Moreover, there can be no serious argument that a prosecutor in Helper's position could reasonably be unaware of these constitutional protections.

Prosecutorial immunity, when it applies, extends to state common law claims as well as federal claims under Section 1983. *Willet v. Ford*, 603 S.W. 2d 143, 147 (Tenn. App. 1979). Helper seems to acknowledge that the state law claims for defamation and interference with employment arise from alleged conduct – namely Helper's communications with Fairview

officials – that is not within the scope of her employment and, thus, not subject to immunity. This is evidenced by Helper's argument that, even if the federal claims against her – which she argues are based on the *Giglio* impairment alone – are dismissed on the basis of prosecutorial immunity, the court should decline to extend supplemental jurisdiction to the state law claims against her. The court need not reach this argument because the federal claims against Helper are proceeding. Moreover, and as discussed above, in light of the fact that the plaintiffs' claims are all based on Helper's actions that are outside of the scope of her prosecutorial role, the doctrine of prosecutorial immunity does not support the dismissal of either the federal or state law claims against her in this action.

Accordingly, none of the claims against Helper will be dismissed on the ground of prosecutorial immunity.

## II. Failure to Plead State Law Claims

Helper argues that the defamation and tortious interference claims are not sufficiently pled and should be dismissed under Rule 12(b)(6).[6] The court will review Helper's argument with respect to each of these claims in turn.

### A. Tortious Interference

"The essential elements of a claim for intentional interference with employment are 'that the defendant intentionally and without justification procured the discharge of the employee in question.'" *Lyne v. Price*, No. W2000-00870-COA-R3-CV, 2002 WL 1417177, *2 (Tenn. Ct. App. June 27, 2002) (quoting *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 760 (Tenn. 1977)). "A claim for intentional interference with employment 'contemplate[s] a three-party relationship

---

[6] Helper does not appear to make any 12(b)(6) argument with respect to the common law retaliation claim, and her argument for dismissal of the retaliation claim rests solely on the argument that the federal claims against her should be dismissed based on immunity and the court should then decline to exercise supplemental jurisdiction.

13

– the plaintiff as employee, the corporation as employer, and the defendants as procurers or inducers.'" *Id*. (quoting *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997)).

Helper argues that this claim should be dismissed because she was justified in her decision to communicate her decision to *Giglio* impair the plaintiffs to Fairview City Manager Collins as part of her duties as a prosecutor, and there is no basis to find that she did this solely to interfere with the plaintiff's employment. As an initial matter, Helper again incorrectly reads the Complaint as arising solely from her decision to communicate the *Giglio* impairment decision to Collins when, in fact, there are allegations of many other communications between Helper and the City of Fairview through which she encouraged the decision to suspend and, later, terminate the plaintiffs. As discussed above, this other conduct clearly fell outside of her role as a prosecutor, and the question of whether these actions were taken in order to improperly procure the plaintiffs' termination – and successfully did so – are factual questions that cannot be addressed at this stage of the litigation. The plaintiffs have more than sufficiently alleged that Helper's actions were taken in retaliation for the plaintiffs' exercise of constitutionally protected rights, a motive that is certainly unjustified and, thus, would support not only the common law retaliation claim but also the intentional interference with employment claim. The Complaint further alleges that Helper acted based on her own personal interests, motives that are again unjustified.

Helper additionally argues that she cannot be liable for tortious interference because she is not an independent third party to the employment relationship between the plaintiffs and the Department but, rather, was acting based on her own interest as a prosecutor in the employment decisions of the Department. This argument fails for two reasons. First, the Complaint clearly alleges that Helper, as a prosecutor, has no official role in the employment decisions of the

14

Department, despite the relationship between Department officers and criminal proceedings. Moreover, as held in a Tennessee case cited by Helper, even an officer of a corporation can be liable for interfering with that corporation's employment relationship with an employee where the interference is based on factors outside of his role in the corporation and is motivated, instead, by the corporate officer's own personal interests. *Lyne*, 2002 WL 1417177, at *3. Again, while Helper may have been justified in sharing with the Department her decision to *Giglio* impair the plaintiffs, a matter within the scope of her prosecutorial duties, this is not the only conduct by Helper underlying the tortious interference claim in this action. Her other communications to the City of Fairview, including the alleged blackmail that she would not staff the courts if the plaintiffs were not terminated, are outside of the scope of her employment and, when read in the light most favorable to the plaintiffs, based solely on her own personal motivations and not based on any unity of interest with the Department.

As a result, the court finds that Helper's arguments with respect to the claim against her for tortious interference are wholly without merit. The Complaint sufficiently alleges the elements of this claim and the claim will not be dismissed.

**B. Defamation**

Next, Helper argues that the plaintiffs have not sufficiently pled their defamation claim because they have not alleged that the communications between Helper and Collins were published, in light of the fact that Helper had a unity of interest with the City of Fairview. Helper is correct that a claim for defamation requires the publication of defamatory comments. *See Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (a defamation claim requires a published statement by the defendant with knowledge that the statement was false and defamatory or with negligence as to its truth). Helper appears to be arguing that any comments

15

made by Helper to the City of Fairview are analogous to internal comments within a single organization because Helper and the City of Fairview were unified in interests regarding the employment of officers. Therefore, according to Helper, the comments were not comments made by one entity to a separate entity and were not publications.

Again, however, reading the Complaint in the light most favorable to the plaintiffs, there was no unity of interest between Helper and the City of Fairview with respect to employment decisions because Helper had no official role in these decisions. Moreover, as discussed above, Helper did not make defamatory comments to Collins based on her alignment with the interests of the city. According to the Complaint, Helper's motives in making these communications were beyond the scope of her role as prosecutor and were intended to influence the decisions of the City based in her own personal motivations as an independent entity. Accordingly, there is no basis to find that these comments were not published for purposes of defamation. The defamation claim, thus, will not be dismissed.

## **CONCLUSION**

For the foregoing reasons, Helper's Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge